IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:10-CR-05 |
| | ) | |
| ROY ROBINSON | ) | |

## **MEMORANDUM AND ORDER**

This criminal case is before the court on the defendant's objections to the magistrate judge's report and recommendation that the defendant's motion to suppress evidence be denied [doc.30]. The government has not responded to the objections within the time allowed. A transcript of the suppression hearing has been prepared [doc. 27], and the objections are ripe for the court's consideration. For the reasons discussed below, the defendant's objections will be overruled.

Under 28 U.S.C. § 636(b), a *de novo* review by the district court of a magistrate judge's report and recommendation is both statutorily and constitutionally required. *See United States v. Shami*, 754 F.2d 670, 672 (6th Cir. 1985). However, it is necessary only to review "those portions of the report or specified proposed findings or recommendations to which objection is made." 28

U.S.C. § 636(b); *see also United States v. Campbell*, 261 F.3d 628, 631-32 (6th Cir. 2001).

**Factual Background**

At the suppression hearing, Officer McElroy of the Johnson City, Tennessee, Police Department, testified that in the early morning hours of January 1, 2010, he had returned to police headquarters. It was about 5:20 a.m. He was standing outside his cruiser when he heard what he believed to be six to eight gunshots. The shots sounded like they were fired in an area near the headquarters named Bell Ridge. Officer McElroy's regular patrol includes Bell Ridge so he was very familiar with the area. There are a couple of public housing developments there and it is known as a high crime area because of drugs and fights.

Officer McElroy called the dispatcher about hearing the shots. He got back in his cruiser and saw a vehicle coming down Bell Ridge Road in front of him. He believed that if someone was fleeing Bell Ridge, they would try to use Broadway as an exit. He drove towards Broadway and saw a light-colored Mercedes turn onto Broadway from the direction of Bell Ridge. Officer McElroy decided to follow and observe the Mercedes. It appeared that the Mercedes was traveling at or near the 30 mph speed limit.

Officer McElroy testified that when he turned to follow the Mercedes, it sped up to about 50 mph. The video recorded from Officer McElroy's cruiser

2

confirms this testimony. He testified that his radar would not have worked because he was moving, but that he had been trained to visually estimate the speed of vehicles. Officer McElroy stated: "Once he took off like that it, I, at that point, when he took off and started accelerating away from my vehicle I made my mind up to stop him." He activated his lights and siren and sped up to try to catch and stop the Mercedes. He also called his dispatcher to report that the Mercedes appeared to be fleeing. Officers Jenkins and Garrison responded to the dispatch.

      At one point the Mercedes slowed down and pulled over to the side of the road as if to stop, but then speeded up again and turned onto a side street where it finally stopped at a stop sign. By this time, Officer Jenkins had arrived and was behind Officer McElroy. The defendant, who was identified as the driver of the Mercedes, opened the door and put both his hands outside the vehicle. Officers McElroy and Jenkins exited their cruisers, drew their weapons, and shouted at the defendant to get out of the car with his hands up. The defendant did not obey the commands for over three minutes. The delay may have been caused, in part, because the defendant had his seat belt on and he could not hear the officers because his music was loud. Officer Garrison stopped on a side street and stayed off to the side with a shotgun to cover the other officers if needed.

      In any event, the defendant finally freed himself from the seat belt and got out of the car. When the defendant stood up, Officers McElroy and

3

Jenkins both heard a shell casing hit the pavement. Officer Jenkins said he saw the "bounce." The officers patted down the defendant, handcuffed him, and put him in the back of Officer McElroy's cruiser.[1] The officers investigated the area and found an empty 380 shell casing on the ground next to the driver's side of the Mercedes. There also was a shell casing in the driver's seat and several on the floor boards of the car. A 380 caliber firearm was found in the glove box with an empty magazine and an odor of gun powder. The empty magazine and the odor of the gun convinced Officer McElroy that the gun had recently been fired. A box of 45 caliber ammunition was found on the floor of the passenger side of the vehicle.

Officer Garrison checked the defendant's record for "wants and warrants" and his criminal history. The defendant has a prior felony conviction. At that point, the defendant was arrested.

## Legal Discussion

In his objections, the defendant argues that the magistrate judge erred in finding that Officer McElroy had a reasonable suspicion or probable cause to stop the defendant's vehicle. He contends that Officer McElroy only heard "possible" gun shots; that he guessed that the shooter, if there was one, would flee in an automobile in his direction; that he could not say that the car he

---

[1] Officer Jenkins testified that he left the scene of the stop at this point to go to Bell Ridge to make sure there were no injuries as a result of the gun shots. He did not find a gunshot victim. Further, the only report of shots fired was that of Officer McElroy.

saw coming down Bell Ridge Road was the Mercedes because it was out of his sight for two to three minutes; and that he only had his own estimate of the speed of the Mercedes to conclude that the Mercedes was fleeing. All of this, he argues, was nothing more than a "hunch." Further, he contends that the search of the Mercedes after the stop was a violation of the recent ruling in *Arizona v. Gant*, 129 S. Ct. 1710 (2009).

The court finds that the issue which must first be considered is whether the stop of the defendant's vehicle was justified, because events subsequent to the stop justified the search of the Mercedes. In *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court found that a "stop" and "frisk" is reasonable under the Fourth Amendment if the officer is able to articulate specific "facts which, taken together with rational inferences from those facts, reasonably warrant" an intrusion into a person's privacy. *Id.* at 17.

In the present case, Officer McElroy believed he heard six to eight gun shots in the early morning on New Year's Day coming from Bell Ridge, a known high crime area. Based on his experience, he expected that someone who shot the gun or was involved in the shooting might be fleeing the scene. In fact, he saw a car coming down Bell Ridge Road right after the shots were fired.[2] Because he regularly patrolled Bell Ridge, he was familiar with the streets one

---

[2] The video of the stop of the defendant's vehicle supports an assumption that there was little other traffic at 5:20 a.m. on a national holiday.

might use to flee the area. Again, based on his knowledge of the area, he anticipated that a vehicle leaving Bell Ridge would use Broadway to get away. He drove to Broadway and saw a Mercedes coming from the Bell Ridge area turning onto Broadway. Officer McElroy prudently pulled his cruiser behind the Mercedes to "observe" it as they traveled down Broadway. But then, the Mercedes sped up to speeds well over the speed limit. At this point, all the circumstances and inferences came together to give Officer McElroy the necessary reasonable suspicion to suspect that the driver of the Mercedes was connected to the gun shots he had heard just minutes before. The court finds that Officer McElroy properly made a *Terry* stop of the Mercedes. *See Gaddis v. Redford Twp.*, 364 F.3d 763, 771 n. 6 (6th Cir. 2004) (summarizing the Sixth Circuit standards for stopping a vehicle: "Police may make an investigative stop of a vehicle when they have reasonable suspicion of an ongoing crime, whether it be a felony or misdemeanor. . .").

Nothing that happened thereafter lessened Officer McElroy's suspicion. Although there was some confusion related to the defendant exiting the Mercedes, the fact remains that he did not obey the officers' commands for over three, tense minutes. And when the defendant finally got out of the car, an empty shell casing fell out of his lap onto the pavement.

The defendant's second objection relates to the search of his vehicle and the seizure of the ammunition and the gun. The defendant argues that under

6

*Arizona v. Gant*, 129 S. Ct. 1710 (2009), the officers were not authorized to search his vehicle. In *Gant*, the Supreme Court ruled that once an arrestee has been secured and cannot access the interior of the vehicle, there may not be a vehicle search incident to the occupant's recent arrest. *Id.* at 1714. This holding was qualified, however, given the "circumstances unique to the automobile context." *Id.* A search incident to arrest is justified when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle. *Id.*

In this case, there is no question that the defendant was secured (handcuffed and placed in the police cruiser) before the search of the vehicle began. However, the defendant was seized because he was suspected of being involved in a shooting on Bell Ridge and was fleeing the scene. It was reasonable for the officers to believe that evidence of the shooting – in particular, the firearm – might be found in the vehicle, especially after an empty shell casing fell out the defendant's lap when he stood up. The court finds that the search of the defendant's vehicle was reasonable under the circumstances.

## Conclusion

For the reasons stated above, the court **ADOPTS** the magistrate judge's findings of fact and conclusion that the defendant's motion to suppress

evidence be denied. It is hereby **ORDERED** that the defendant's objections to the report and recommendation are **OVERRULED**, and the defendant's motion to suppress evidence [doc. 17] is **DENIED**.

ENTER:

_s/ Leon Jordan_
United States District Judge